[Cite as *Hertelendy v. Great Lakes Architectural Serv. Sys., Inc.*, 2012-Ohio-4157.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97782

---

## GEORGE Z. HERTELENDY

### PLAINTIFF-APPELLANT

vs.

## GREAT LAKES ARCHITECTURAL SERVICE SYSTEMS, INC., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-759133

**BEFORE:** Keough, J., Blackmon, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** September 13, 2012

**ATTORNEY FOR APPELLANT**

Lester S. Potash
55 Public Square
Suite 1717
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEES**

**For Ohio Department of Job & Family Services**

Mike Dewine
Ohio Attorney General

BY:   Patrick MacQueeney
Assistant Attorney General
615 West Superior Avenue
11th Floor
Cleveland, OH 44113-1899

**For Great Lakes Architectural Service Systems**

Bruce L. Waterhouse
25 West Prospect Avenue
Republic Building, Suite 1400
Cleveland, OH 44115

KATHLEEN ANN KEOUGH, J.:

{¶1} Plaintiff-appellant, George Z. Hertelendy ("Hertelendy"), appeals the trial court's decision affirming a judgment of the Ohio Unemployment Compensation Review Commission ("UCRC") that denied his claim for unemployment benefits. For the following reasons, we reverse that judgment and remand the matter to the trial court with instructions.

{¶2} Hertelendy was hired by appellee Great Lakes Architectural Service Systems, Inc. ("Great Lakes") on August 25, 2010. Hertelendy's application for employment indicated he was applying for a "fabricator" position. He also noted on his application that he was convicted for "driving — OVI." On August 30, 2010, he was terminated from employment with Great Lakes because, according to Mike Kelly ("Kelly"), president of Great Lakes, Hertelendy was uninsurable by the company's insurance carrier due to his driving record and thus unable to perform his job as a fabricator and driver.

{¶3} In September 2010, after being terminated from employment with Great Lakes, Hertelendy filed an application for unemployment compensation with appellee Ohio Department of Job and Family Services. The agency disallowed the application, determining that Hertelendy had been discharged with just cause. On appeal, the director's redetermination affirmed the denial of benefits. A second appeal followed, and the matter was transferred to the UCRC for an evidentiary hearing.

{¶4} On March 2, 2011, a telephone hearing was conducted. Prior to taking any testimony, the hearing officer inquired as to the two witnesses Hertelendy listed for the hearing. Hertelendy explained that Bob Schibli was a general union organizer of Ironworkers Local 468 and that "he got me the job at [Great Lakes] because they needed an ironworker and uh so he uh set me up with Mike Kelly and uh that's when I went for the interview." Hertelendy said that his other witness was John Bielak, union president of Ironworkers Local 468. The hearing officer then asked Kelly about his witness — Kathy Kelly. Kelly stated that Ms. Kelly was the secretary and treasurer of Great Lakes, but that he had more knowledge about Hertelendy's employment. The hearing officer then explained the procedure of the hearing, including that if he determined that the parties' witnesses were relevant and material, he would call them to testify.

{¶5} Kelly testified that Hertelendy was employed with his company from August 25 to August 30, 2010 as "one of the shop men and he was to be the, one of the drivers and basically work in the shop." Kelly stated that Hertelendy was a member of the Ironworkers Local 468 union, which was one of the unions within Great Lakes. The other union was for drivers who were employed at Great Lakes. When questioned about the circumstances surrounding Hertelendy's hiring, Kelly stated that when he hired Hertelendy, the company "needed a driver and also to see how he would do in the fabrication which is his training but he said he'd be able to drive."

{¶6} During cross-examination of Kelly, Hertelendy disputed that he was hired as a driver, but instead maintained he was hired as a fabricator. Hertelendy stated during

his cross-examination of Kelly that "I was hired as a fabricator and that was per Bob Schibli, that was, I was the ironworker for you [Kelly]." The hearing officer followed up and asked Kelly if Hertelendy was hired as a fabricator or as a fabricator and driver. Kelly responded that he advised Hertelendy when he was hired that driving was one of his main duties because they were a small company and materials needed to be delivered out in the field. Hertelendy also stated during his cross-examination of Kelly that he was able to drive, but that he "wasn't hired as a driver the way I understood it. The way I understood it and uh it was a fabricator inside ironworkers and uh do some repair field work."

{¶7} After Kelly testified, the hearing officer asked what Kathy Kelly would testify about. Kelly stated that she handles the payroll. The hearing officer then determined that her testimony was not needed, which Kelly agreed.

{¶8} Hertelendy testified that he was hired as a fabricator and he did not know he had to drive trucks. He stated he was a member of Ironworkers Local 468, and denied he was told when he was hired that part of his duties would be driving to deliver materials to the field. Additionally, he denied he was told at the beginning of his employment that he had to be insured by Great Lakes' insurance company. During cross-examination, he admitted that he had a DUI conviction and did not tell Kelly during the interview that he had any restrictions on his driver's license. Thereafter, the hearing officer said that he did not "believe [he] need[ed] to take the testimony of Mr. Shibly [sic] or Mr. Balke [sic]."

**{¶9}** In his closing statement, Hertelendy stated that he disclosed on his employment application that he was convicted of "OVI" and he also gave Great Lakes his driver's license to copy. Additionally, Hertelendy explained that he had court-ordered driving privileges to drive to and from work and during employment, and was able to drive employment vehicles.

**{¶10}** The hearing officer issued a decision affirming the director's redetermination that Hertelendy was discharged for just cause. In his findings of fact, the hearing officer found:

> [Hertelendy] was required to operate company vehicles delivering material to the field. As such, it was required that the claimant be insurable by the employer's insurance company.
>
> When the claimant first arrived at work, it was noticed that his vehicle had yellow plates on it. Mr. Kelly checked with his insurance company and his insurance company determined that because the claimant had a DUI on his record, he was not insurable.

**{¶11}** In his decision, the hearing officer reasoned that "[t]he facts set forth above show that the claimant was not insurable to the employer's insurance company which was a condition of employment. The claimant was discharged with just cause in connection with work."

**{¶12}** Hertelendy subsequently filed a Request for Review, and on June 8, 2011, the full UCRC issued a decision disallowing Hertelendy's request. Hertelendy appealed to the common pleas court arguing that the UCRC's decision was against the manifest weight of the evidence and that he was denied a fair hearing, and thus denied due process. Following briefing and a review of the record, the court found that the decision of the

UCRC was not unlawful, unreasonable, or against the manifest weight of the evidence and denied the appeal. The court did not address Hertelendy's due process argument.

{¶13} Hertelendy appeals, raising as his sole assignment of error that the trial court erred in affirming the denial of his application for unemployment benefits. He contends that he was denied a fair UCRC hearing because he was unable to question his witnesses and that the decision of the UCRC was unlawful, unreasonable, and against the manifest weight of the evidence.

{¶14} R.C. 4141.29 sets forth the eligibility and qualifications for unemployment benefits:

> (D) * * * [N]o individual may serve a waiting period or be paid benefits under the following conditions:
>
> * * *
>
> (2) For the duration of the individual's unemployment if the director finds that:
>
> (a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * * .

{¶15} The Ohio Supreme Court recently reiterated the standard of review for unemployment compensation appeals in *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 20:

> The Unemployment Compensation Review Commission's determination of whether a claimant was discharged with just cause is appealable to the court of common pleas: "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." R.C. 4141.282(H). This limited standard of review applies

to all appellate courts. *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18, 482 N.E.2d 587.

**{¶16}** While appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record. *Id.*, citing *Irvine*. This duty is shared by all reviewing courts, from the first level of review in the common pleas court through the final appeal. Therefore, the focus of an appellate court when reviewing an unemployment compensation appeal is upon the commission's — not the trial court's — decision. *Howard v. Electronic Classroom of Tomorrow*, 10th Dist. No. 11AP-159, 2011-Ohio 6059, ¶ 12, citing *Moore v. Comparison Market, Inc.*, 9th Dist. No. 23255, 2006-Ohio-6382, ¶ 8.

**{¶17}** Hertelendy contends that he was denied a fair hearing because the hearing officer prevented him from calling witnesses that would have testified about the capacity in which he was hired — as a fabricator and not a driver.

**{¶18}** The principles of due process in administrative hearings apply to all hearings conducted under the authority of the commission. R.C. 4141.281(C)(2). The key factor in deciding whether a hearing satisfies procedural due process is whether the claimant had the opportunity to present the facts that demonstrate he was entitled to unemployment benefits. *Howard* at ¶ 15, citing *Atkins v. Ohio Dept. Of Job & Family Servs.*, 10th Dist. No. 08AP-182, 2008-Ohio-4109, ¶ 17. This is because "'[t]he object of the hearing is to ascertain the facts that may or may not entitle the claimant to unemployment benefits.'" *Id.*, quoting *Bulatko v. Ohio Dept. Of Job & Family Servs.*,

7th Dist. No. 07 MA 124, 2008-Ohio-1061, ¶ 11.

**{¶19}** While R.C. 4141.281(C)(2) requires that commission hearings satisfy due process principles, it also provides that "[i]n conducting hearings, all hearing officers shall control the conduct of the hearing, exclude irrelevant and cumulative evidence, and give weight to the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of serious affairs." Thus, "'[t]he hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general.'" *Howard* at ¶ 16, quoting *Bulatko* at ¶ 11. "The hearing officer's discretion is tempered only to the extent that he must afford each party an opportunity to present evidence that provides insight into the very subject of the dispute." *Howard* at ¶ 16, citing *Owens v. Ohio Bur. of Emp. Servs.*, 135 Ohio App.3d 217, 220, 733 N.E.2d 628 (1st Dist.1999).

**{¶20}** In this case, Hertelendy wanted to call two witnesses to testify at the hearing. The hearing officer determined that Hertelendy's witnesses were not needed, even though the hearing officer did not inquire into the nature of their testimony, like he did for Kelly's witness. Instead, the hearing officer summarily determined they were not needed. According to Hertelendy, Bob Schibli and John Bielak would have testified that he was hired as a fabricator.

**{¶21}** On appeal, the appellees contend that the hearing officer exercised his discretion in excluding Hertelendy's witnesses because their testimony would have been cumulative to Hertelendy's testimony. While a hearing officer may exclude cumulative, irrelevant, or immaterial testimony, this discretion is not unfettered. When the testimony

of witnesses would allow the hearing officer to ascertain the facts that may or may not entitle the claimant to benefits, then the testimony is relevant and material. *See Howard* at ¶ 17; *Perry v. Buckeye Community Servs.*, 48 Ohio App.3d 140, 142, 548 N.E.2d 1308 (4th Dist.1988); *but see Powell v. Brown Publishing Co.*, 3d Dist. No. 10-03-03, 2003-Ohio-2566, ¶ 7 (hearing officer determined testimony of claimant's witness was not needed after the officer inquired as to the nature of the testimony).

{¶22} In this case, conflicting testimony was given regarding Hertelendy's job title and description and in what capacity he was hired. Hertelendy testified that he applied for and was hired as a fabricator and was not advised that he had to drive for employment. Kelly testified that Hertelendy was hired as one of the drivers and to work in the shop. He also testified that when Hertelendy was hired, the company needed a driver, but Hertelendy would also be considered as a fabricator because that was his training.

{¶23} No job description was submitted to the hearing officer, nor is one part of the UCRC record. According to Hertelendy's testimony, Bob Schibli from his union referred him to Kelly. Because of the conflicting testimony and lack of a job description, the testimony of Hertelendy's witnesses would have been relevant and material to the issue of Hertelendy's job capacity.

{¶24} If no dispute as to Hertelendy's position and job duties when he was hired existed, the testimony of his two witnesses may not have been material or relevant as the hearing officer concluded. However, the hearing officer concluded that because Hertelendy was uninsurable, he was terminated with just cause. Therefore, the ultimate

issue in this case was whether Hertelendy was hired as a fabricator or driver. If he was hired as a fabricator, whether he was insurable would be of no consequence in relation to his job duties as fabricator. Hertelendy's witnesses would have provided relevant and material testimony relating to this issue and would have allowed the hearing officer to "ascertain the facts that may or may not entitle the claimant to benefits."

{¶25} Furthermore, Hertelendy testified that he was insurable, had occupational driving privileges, and had disclosed on his application that he had an OVI on his record. Kelly testified that after he discovered Hertelendy's "yellow plates" on his vehicle — which was after Hertelendy was hired — he called his insurance company and it advised him that Hertelendy was uninsurable due to his driving record. Again, no documentation was submitted to the hearing officer evidencing that Kelly's insurance company would not insure Hertelendy. If driving was a condition precedent of employment it is interesting that Kelly did not verify Hertelendy's insurability prior to hiring him.

{¶26} Great Lakes relies on a variety of cases from this district for its proposition that a person can be terminated from employment for just cause when that person is not insurable to operate a company's vehicles for employment purposes. *See, e.g., Piazza v. Ohio Bur. of Emp. Servs.*, 72 Ohio App.3d 353, 594 N.E.2d 695 (8th Dist.1991). However, the cases cited by Great Lakes are easily distinguishable — the status of the employees' driver's licenses in each of these cases changed during the term of employment with their respective employers, which rendered them uninsurable after they knew their job description and the employer's policies. In this case, Hertelendy's license

status did not change after his employment commenced.

{¶27} Nevertheless, we decline to reach the ultimate issue of the appeal — whether Hertelendy was terminated for just cause — because we find that there is insufficient evidence in the record to support the commission's decision and that Hertelendy was denied a fair hearing because he was precluded from calling his witnesses at the UCRC hearing. The hearing officer abused his discretion by not allowing Hertelendy to present testimony that would "ascertain the facts that may or may not entitle" him to benefits.

{¶28} Accordingly, we find merit to Hertelendy's assignment of error to the extent indicated and reverse the judgment of the trial court. We remand the matter to the trial court with instructions to reverse the judgment of the commission and remand the matter for another hearing consistent with the law and this decision.

{¶29} Judgment reversed and remanded with instructions.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

PATRICIA ANN BLACKMON, A.J., and
MARY J. BOYLE, J., CONCUR