[Cite as *Mikhelson v. Dir., Ohio Dept. of Job & Family Servs.*, 2025-Ohio-2524.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IGOR MIKHELSON,                                    :

    Plaintiff-Appellant,                       :

    v.                                                      :

No. 114458

DIRECTOR, OHIO DEPT. OF JOB AND : 
FAMILY SERVICES, ET AL.,

                                                             :

    Defendants-Appellees.                    

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:**  July 17, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-996928

---

### *Appearances:*

Igor Mikhelson, *pro se.*

David Yost, Ohio Attorney General, and Laurence R. Snyder, Senior Assistant Attorney General, *for appellee* Director, Ohio Department of Job and Family Services.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Claimant-appellant, Igor Mikhelson, appeals from a judgment of the Cuyahoga County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission ("Commission"), finding that

Mikhelson fraudulently misrepresented his earnings with the intent of obtaining unemployment compensation to which he was not entitled. Mikhelson raises seven assignments of error for our review:

1. The trial court did not apply the correct definition of fraud to the case.

2. The trial court did not recognize that the appellant was not able to resolve potential fraud issues in the beginning of the problem due to a malfunctioning unemployment system, and system reporting errors.

3. The trial court did not recognize that, after the telephone hearing, the Appellant's weeks of fraud were reduced from 22 to 20.

4. The trial court did not recognize that the Appellant over reported his earnings in addition to underreporting which were ignored.

5. The trial court failed to ensure proper legal procedures for an in person hearing to address the significant language barrier that caused comprehension issues.

6. The trial court did not consider all the reasons why the applicant failed to report wages correctly.

7. The trial court failed to recognize the errors, delays, and miscalculations made by ODJFS.

{¶ 2} After review, we conclude that the Commission's finding that Mikhelson fraudulently reported his wages for 22 weeks was not unlawful, unreasonable, or against the manifest weight of the evidence. We further conclude that although the Commission removed two of the original 22 weeks, it added two additional weeks from April 2021 and, therefore, the Commission and the trial court did not err when they determined that Mikhelson underreported his wages for 22 weeks. We also find no error in the format of the hearing. Finally, there is no indication in the record that the Commission failed to recognize errors made by

ODJFS.  Accordingly, we remand the matter to ODJFS for it to recalculate Mikhelson's overpayment and penalty based on the Commission's decision modifying ODJFS's redetermination.

## I. Procedural History and Factual Background

{¶ 3} Mikhelson lost his job at Shulte Hospitality Group in March 2020, because of Covid-19.  He applied for unemployment compensation in April 2020.  At the time of his application, he was still employed part time at M&Y Care, L.L.C. ("M&Y Care").  ODJFS approved Mikhelson's application for unemployment compensation from April 2020 to April 2021.

{¶ 4} In March 2023, Mikhelson received a determination letter from ODJFS, stating that he had fraudulently misrepresented his earnings from M&Y Care when filing his weekly claims for unemployment compensation from August 8, 2020, through March 27, 2021, and that he had been overpaid benefits to which he was not entitled.  ODJFS informed Mikhelson that he owed a total of $9,191.25 in backpay and mandatory penalties.  Mikhelson appealed the determination.

{¶ 5} ODFJS issued a redetermination in January 2024, affirming its original determination issued in March 2023.  Mikhelson again appealed.  The matter was transferred to the Commission, which held a hearing in late February 2024.  Three witnesses appeared at the hearing:  Todd Keller, Director of Human Resources at M&Y Care; Eugenia Alexander, Fraud Investigator at ODJFS; and Mikhelson.

{¶ 6} At the telephonic hearing, Keller testified to Mikhelson's hourly rate and to the number of hours that Mikhelson worked each week for the weeks ending on August 8, 2020, through April 10, 2021.

{¶ 7} During Mikhelson's testimony, he explained that he reported his net pay for the weeks at issue rather than his gross pay. The hearing officer asked Mikhelson why he reported his net pay for each week when the form "says report your gross earnings." Mikhelson replied that he "just didn't look" at it.

{¶ 8} The Commission issued a decision in late February 2024, modifying ODJFS's redetermination. It found that Mikhelson overreported his earnings for the weeks ending August 8, 2020, and August 15, 2020, and, therefore, Mikhelson did not commit fraud for those two weeks. However, the Commission found that Mikhelson fraudulently misrepresented and underreported his earnings to ODJFS between $24 and $70 each week for 22 weeks, specifically, for the weeks ending August 22, 2020, through September 26, 2020; the weeks ending November 28, 2020, through February 20, 2021; and the weeks ending March 27, 2021, through April 10, 2021. The Commission noted that Mikhelson "denied any fraudulent intent and testified that the error occurred because he accidentally reported his net earnings instead of his gross earnings." But the Commission explained that when Mikhelson "was asked why he would repeatedly do this, when every week the new claim form clearly asks for gross wages, [he] could not provide a reasonable response."

{¶ 9} The Commission remanded the matter to ODJFS to recalculate Mikhelson's overpayment and penalty based on its decision. The Commission denied Mikhelson's request for further review, and Mikhelson appealed the matter to the Cuyahoga County Court of Common Pleas.

{¶ 10} The common pleas court affirmed the Commission's decision, finding that it was not unlawful, unreasonable, or against the manifest weight of the evidence. It is from this judgment that Mikhelson now appeals.

## II. Law and Analysis

### A. Standard of Review

{¶ 11} R.C. 4141.282(H) governs our standard of review and states that "[i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." *See also Geretz v. Dir., Ohio Dept. of Job & Family Servs.*, 2007-Ohio-2941, ¶ 10, quoting *Tzangas, Plakas & Mannos v. Admin., Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697 (1995) ("'[A] reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence.'"). This standard of review applies to "all reviewing courts, from the first level of review in the common pleas court, through the final appeal" in the Ohio Supreme Court. *Tzangas* at 696.

{¶ 12} When reviewing a decision from the Commission, we must refrain from making factual findings or weighing the credibility of witnesses and must

instead determine whether the evidence in the certified record supports the Commission's decision. *Id.*, citing *Irvine v. State Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985). If such evidence is found, the reviewing court may not substitute its judgment for that of the Commission. *Wilson v. Unemp. Comp. Bd. of Rev.*, 14 Ohio App.3d 309, 310 (8th Dist. 1984). "'[T]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Commission's] decision.'" *Tzangas* at 697, quoting *Irvine* at 18.

{¶ 13} Thus, we must review the Commission's decision to determine whether it was unlawful, unreasonable, or against the manifest weight of the evidence. When determining whether a decision is against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [decision] must be reversed . . . .'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App. 3d 172, 175 (1st Dist. 1983).

{¶ 14} We note that in this case, Mikhelson frames each of his assigned errors as challenging the trial court's judgment, i.e., the common pleas court's judgment. But according to R.C. 4141.282(H), this court must focus on the decision of the Commission rather than the judgment of the common pleas court. *Ricks v. Dir., Ohio Dept. of Job & Family Serv.*, 2013-Ohio-3253, ¶ 11 (8th Dist.), citing

*Hertelendy v. Great Lakes Architectural Serv. Sys.*, 2012-Ohio-4157, ¶ 16 (8th Dist.). Thus, we will reframe Mikhelson's arguments as necessary.

## B. Fraud

{¶ 15} In his first, second, fourth, and sixth assignments of error, Mikhelson argues that the Commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence because ODJFS did not establish that he acted with fraudulent intent.

### 1. Fraudulent Intent

{¶ 16} Mikhelson argues in his first assignment of error that the evidence proved he was "confused in filing his application for benefits." He further asserts that his mistake was because of "the language barrier and his limited understanding of how to complete the forms correctly."

{¶ 17} In support of his argument, Mikhelson cites R.C. 4141.29(D)(2)(d) and *Diliberto v. Admr., O.B.E.S.*, 1989 Ohio App. LEXIS 2859 (8th Dist. Jul. 20, 1989). In *Diliberto*, this court relied on R.C. 4141.29(D)(2)(d), explaining that it "deals with fraud and unemployment compensation benefits." *Id*. at *4. We stated that this provision provides that a claimant commits fraud when "'[h]e has knowingly made a false statement or representation or knowingly failed to report any material fact with the object of obtaining benefits to which he is not entitled.'" *Id*., quoting former R.C. 4141.29(D)(2)(d). We concluded in *Diliberto* that there was no evidence of "specific intent on the part of the appellant to obtain unemployment benefits." *Id*. at *5.

{¶ 18} However, the General Assembly repealed R.C. 4141.29(D)(2)(d) in 2005 Am.Sub.S.B. 81, effective September 2005. Because *Diliberto* relied on this subsection, the case is no longer good law.

{¶ 19} Mikhelson further claims that ODJFS did not establish the elements of common law fraud, specifically fraudulent intent. In *Johnson v. Ohio Bur. of Emp. Servs.*, 1998 Ohio App. LEXIS 2177 (8th Dist. May 14, 1998), this court rejected the claimant-appellant's argument that "the common law standard of scienter (*i.e.*, specific subjective intent to defraud)" applied. *Id.* at *9. We explained that fraud that arises under R.C. 4141.35 is "'a special statutory proceeding,'" and therefore, the common law definition of fraud did not apply. *Id.* at *9, quoting *Ridel v. Bd. of Review*, 1980 Ohio App. LEXIS 14014 (7th Dist. May 9, 1980). Although this court relied on R.C. 4141.29(D)(2)(d) in *Johnson*, which has been repealed, we also relied on R.C. 4141.35(A), which is still in effect.

{¶ 20} R.C. 4141.35(A) provides that "[i]f the director of job and family services finds that any fraudulent misrepresentation has been made by an applicant for or a recipient of benefits with the object of obtaining benefits to which the applicant or recipient was not entitled," then the director "shall," among other things, (1) reject or cancel such person's entire weekly claim for benefits that was fraudulently claimed, (2) "declare that, for each application for benefit rights and for each weekly claim canceled, such person shall be ineligible for two otherwise valid weekly claims for benefits, claimed within six years subsequent to the discovery of such misrepresentation," (3) "require that the total amount of benefits rejected or

canceled . . . be repaid to the director before such person may become eligible for further benefits," and (4) assess a mandatory penalty equal to 25 percent of the total amount of benefits that were fraudulently received.  R.C. 4141.35(A)(1)-(4).

{¶ 21} We explained in *Johnson* that fraud under R.C. 4141.35(A) "'simply refers to the making of a statement that is false, where the party making the statement does or should know that it is false.'"  *Id.* at *10, quoting *Ridel.*  Courts may infer a claimant's "'intent to commit fraud . . . from intrinsic or extrinsic evidence, as well as from the surrounding circumstances.'"  *Id.* at *11, quoting *Christie v. Admr.,* 1996 Ohio App. LEXIS 3875, *8-9 (11th Dist. Sept. 6, 1996).  And whether "a party engaged in a fraudulent act is a factual determination" that may not be disturbed "if there is some credible proof upon which the [Commission's] decision was based.'"  *Id.,* quoting *id.*

{¶ 22} In this case, Mikhelson testified that he reported his net wages rather than his gross wages because he "just didn't look" at it.  He did not state that he did not understand the weekly form because of language barriers or otherwise.  He did not tell the hearing officer that he could not read the form because of language barriers or otherwise.  He simply stated that he did not look at it.

{¶ 23} The Commission rejected Mikhelson's assertion that "the error occurred because he accidentally reported his net earnings instead of his gross earnings," finding that Mikhelson's response that he "just didn't look at it" was unreasonable.  After review, we conclude that there is evidence in the certified record supporting the Commission's decision.  Therefore, we may not substitute our

judgment for that of the Commission. *Tzangas*, 73 Ohio St.3d at 696, citing *Irvine*, 19 Ohio St.3d at 19.

### 2. Malfunctioning Unemployment System

{¶ 24} In his second assignment of error, Mikhelson argues that the Commission failed to recognize that he was not able to resolve potential fraud issues "in the beginning of the problem due to a malfunctioning unemployment system, and system reporting errors." We disagree. The majority of Mikhelson's testimony regarding the "malfunctioning unemployment system" was in response to the hearing officer's questions with respect to the timeliness of Mikhelson's original appeal. The Commission accepted Mikhelson's claims that he filed his appeal untimely because of technical issues. (The Commission found that Mikhelson filed the appeal timely despite filing it over three months late.)

### 3. Mistake Regarding Number of Weeks

{¶ 25} In his fourth and sixth assignments of error, Mikhelson claims that the Commission failed to consider "all the reasons why [he] failed to report wages correctly" and did not consider that he overreported his earnings in two of the 22 weeks at issue and, thus, he only committed fraud for 20 weeks and not 22 weeks. He further claims that because he overreported his income and because M&Y Care also made mistakes when reporting his wages, these facts prove that he "did not intentionally take money from the government." Again, we disagree.

{¶ 26} The Commission modified ODJFS's determination and redetermination after considering Keller's testimony regarding the wages

Mikhelson earned during the reporting weeks versus what Mikhelson reported he earned. Ultimately, the Commission found that Mikhelson overreported his earnings for two of the reporting weeks at issue (in August 2020) and therefore removed two of the original 22 weeks. But then the Commission found that Mikhelson underreported his earnings for two additional weeks that ODJFS did not originally include (in April 2021), which resulted in 22 weeks total. Thus, the Commission considered all the evidence that was presented at the hearing as well as Mikhelson's arguments.

### 4. Conclusion

{¶ 27} After review, we conclude that the Commission's finding that Mikhelson fraudulently reported his wages for 22 weeks was not unlawful, unreasonable, or against the manifest weight of the evidence. Thus, Mikhelson's first, second, fourth, and sixth assignments of error are without merit and are overruled.

### C. Remaining Arguments

{¶ 28} In his third assignment of error, Mikhelson claims that the common pleas court made an incorrect factual statement when it concluded that the Commission found that he underreported his earnings for 22 weeks instead of 20 weeks. Again, upon appeal to this court, we review the Commission's decision and not the common pleas court's judgment. But we will briefly address this argument. Mikhelson seems to be claiming that the common pleas court did not consider the fact that the Commission removed two of the weeks as fraud because it found that

Mikhelson overreported his earnings for two weeks in August 2020. We disagree. As we previously stated, although the Commission removed two of the original 22 weeks, it added two additional weeks from April 2021. Thus, the trial court was correct when it stated that the Commission found that Mikhelson underreported his wages for 22 weeks. Mikhelson's third assignment of error is therefore overruled.

{¶ 29} In his fifth assignment of error, Mikhelson argues that the Commission did not consider the fact that there was a "significant language barrier that caused comprehension issues." He asserts that he "has limited English proficiency" and therefore, the hearing officer should have held an in-person hearing. We disagree. The Review Commission notified Mikhelson that his hearing before the Commission would be telephonic. The notice further informed him that if he wished to have an in-person hearing, he had to request one within ten days of receiving the notice. The record reflects that he did not do so.

{¶ 30} Mikhelson further argues that the hearing officer should have provided bilingual services to him. The transcript reveals, however, that Mikhelson did not raise the issue of language comprehension to the hearing officer at the hearing. Moreover, nowhere in the transcript does it appear as if Mikhelson could not speak English properly or could not understand it. Mikhelson answered each of the hearing officer's questions appropriately.

{¶ 31} Mikhelson's fifth assignment of error is overruled.

{¶ 32} In his seventh assignment of error, Mikhelson's entire argument states:

Another argument is that when looking at all these checks, the Appellate figured out the core of the issue, but the court did not try to go through these checks again to understand what was happening. The court ignored the fact that M & Y Care LLC. the one who issued the checks, provided incorrect amounts, and the court did not mention this in its reasoning.

{¶ 33} Again, we review the Commission's decision and not the trial court's judgment. Although Mikhelson claims that M & Y Care provided incorrect amounts, Mikhelson testified at the hearing and did not dispute the accuracy of the wages reported. We therefore find no merit to his argument.

{¶ 34} We have also reviewed the Commission's decision and conclude that it was not unlawful, unreasonable, or against the manifest weight of the evidence. Mikhelson's seventh assignment of error is overruled.

{¶ 35} Judgment affirmed. Case remanded to ODJFS to recalculate Mikhelson's overpayment and penalty based on the Commission's decision modifying ODJFS's edetermination.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
MICHAEL JOHN RYAN, J., CONCUR